### UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| GRAHAM & COMPANY, LLC, and BP GRAHAM, LLC, | } |
| | } |
| Plaintiffs, | } |
| | }   **Case No.: 2:14-cv-02148-JHH** |
| v. | } |
| | } |
| LIBERTY MUTUAL FIRE INSURANCE COMPANY, | } |
| | } |
| Defendant. | } |

### <u>MEMORANDUM OPINION</u>

**I.      Introduction**

This case is before the court on Plaintiffs' Motion To Compel Liberty To Respond To Bad Faith Discovery (Doc. # 38), filed August 31, 2015. The Motion is fully briefed. (Docs. # 38, 42, 46). For the following reasons, the Motion is due to be denied in part and granted in part with modifications to discovery requests, and is moot in part.

**II.      Background Facts and Procedural History**

Plaintiffs assert claims for insurance recovery and bad faith arising from Defendant's denial of coverage for an electrical loss at one of Plaintiffs' coastal properties, 550 Water Street. (Doc. # 1). In their Complaint, Plaintiffs contend that they thereafter learned that all nine of their coastal properties were erroneously omitted from the first-party insurance policy issued by Defendant[1] (the "Policy") during the underwriting process. (*Id.*). Thus, Plaintiffs sought coverage for their coastal properties under the Policy's Errors and Omissions Insuring Clause

---

[1] That is, the Equipment Breakdown Insurance Policy No. YB2-L9L-462217-014 for the period March 1, 2014, to March 1, 2015. (*See* Doc. # 1-1).

(the "E&O Clause"), which they argue is intended to cover an "error or unintentional omissions" resulting in a "failure through error to include any premises owned or operated" by Plaintiffs. (*See id.*).   Defendant concluded that there was no failure through error to schedule 550 Water Street on the Policy, and, even if there was such a failure through error, that an exception to the E&O Clause applies (that is, a failure by Plaintiffs "to report values").   (*Id.*).   Plaintiffs allege that Defendant's analyst, Dwight Hinton, failed to conduct a good faith investigation of the claim under the E&O Clause, "and improperly coordinated with the Liberty underwriter to manufacture a bogus reason for its denial." [2]   (Docs. # 1, 38).   And, Plaintiffs aver that Defendant erroneously concluded that the E&O Clause does not apply.   (Doc. # 1).

On February 5, 2015, Plaintiffs served Defendant written discovery concerning the bad faith claim.   (Doc. # 38).   Defendant timely responded with objections to many of Plaintiffs' requests.   (*See id.*).   This Motion followed.   (*Id.*).

## III.   Legal Standards

Pursuant to the Federal Rules of Civil Procedure, a party may obtain discovery "regarding any non-privileged matter that is relevant to any party's claim or defense. . . ."   Fed. R. Civ. P. 26(b)(1). [3]   Information sought in discovery does not need to be admissible at trial "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."   *Id.*; *see also Adkins v. Christie*, 488 F.3d 1324, 1330 (11th Cir. 2007).   "The party resisting

---

[2] To prevail on a bad faith cause of action in a first-party insurance claim (which also allows for punitive damages), Plaintiffs must prove that Defendant intentionally refused "to settle a *direct claim* where there is either (1) no lawful basis for the refusal coupled with actual knowledge of that fact or (2) intentional failure to determine whether or not there was any lawful basis for such refusal."   *Franklin v. Natl. Gen. Assur. Co.*, 2015 WL 350633, at *13 (M.D. Ala. Jan. 23, 2015) (quoting *Chavers v. Natl. Sec. Fire & Cas. Co.*, 405 So.2d 1, 6 (Ala. 1981)) (emphasis in original); *see also Mueller v. Hartford Ins. Co. of Ala.*, 475 So.2d 554, 556 (Ala. 1985) (citations omitted) (same).   "Or, stated differently, the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim."   *Mueller*, 475 So.2d at 556.

[3] The 2015 amendments to Rule 26 took effect December 1, 2015.   Plaintiffs' discovery requests and Motion To Compel were filed prior to that time.   (*See* Doc. # 38).   Therefore, the pre-December 1, 2015 version of the Federal Rules of Civil Procedure is applicable here.

discovery has a heavy burden of showing why the requested discovery should not be permitted . . . [with] '[t]he onus [] on the party resisting discovery to demonstrate specifically how the objected-to information is unnecessary, unreasonable or otherwise unduly burdensome." *Rosen v. Provident Life & Accident Ins. Co.*, 308 F.R.D. 670, 678 (N.D. Ala. 2015) (quoting *Henderson v. Holiday CVS, L.L.C.*, 269 F.R.D. 682, 686 (S.D. Fla. 2010)) (changes in *Rosen*).

District courts may limit discovery when "the burden or expense of the proposed discovery outweighs its likely benefit. . . ." Fed. R. Civ. P. 26(b)(2)(c)(iii). But, courts must "accord discovery a broad and liberal scope in order to provide parties with information essential to the proper litigation of all relevant facts, to eliminate surprise, and to promote settlement." *Giraldo v. Drummond Co., Inc.*, No. 09-cv-01041, 2012 WL 2358297, at *1 (N.D. Ala. June 15, 2012) (citing *Hickman v. Taylor*, 329 U.S. 495 (1947)). Stated otherwise:

> [D]istrict courts have broad discretion in fashioning discovery rules, but they are bound to adhere 'to the liberal spirit of the [Federal] Rules." *Burns v. ThiokolChem. Corp.*, 483 F.2d 300, 305 (5th Cir. 1973). The Federal Rules do not give district courts "blanket authorization . . . to prohibit disclosure of information whenever it deems it advisable to do so, but are rather a grant of power to impose conditions on discovery in order to prevent injury, harassment, or abuse of the court's processes." *Williams v. City of Dothan, Ala.*, 745 F.2d 1406, 1416 (11th Cir. 1984) (quoting *Bridge C.A.T. Scan Assocs. v. Technicare Corp.*, 710 F.2d 940, 944-45 (2d Cir. 1983)).

*Adkins*, 488 F.3d at 1331.

A party may seek an order to compel discovery if an opposing party fails to respond to discovery requests or has an evasive or incomplete response. Fed. R. Civ. P. 37(a)(3)(A), (B). "In ruling on a discovery motion, courts consider the totality of the circumstances, weighing the value of material sought against the burden of providing it, and taking into account society's interest in furthering the truth-seeking function in a particular case before the court." *Giraldo*,

2012 WL 2358297, at *2 (citing *Patterson v. Avery Dominion Corp.*, 281 F.3d 676, 681 (7th Cir. 2002)).

Further, a district court should consider the proportionality test inherent in Rule 26.  *See Maxtena, Inc. v. Marks*, 289 F.R.D. 427, 435 (D. Md. 2012).  That test

> requires the frequency or extent of discovery to be limited if: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

*Id.* at 434 (quoting Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii) (internal quotation marks omitted). "[C]ounsel (and ultimately the court) first must consider whether the desired information is relevant to the claims and defenses in the action, and then ask whether the proposed discovery is proportional to the needs of the case or unduly burdensome or expensive based upon an assessment of various factors" not limited to those listed in Rule 26.  *Witt v. GC Servs. Ltd. Partnership*, 307 F.R.D. 554, 569 (D. Colo. 2014).  "Any application of the proportionality factors must start with the actual claims and defenses in the case, and a consideration of how and to what degree the requested discovery bears on those claims and defenses."  *Id.*

## IV.  Analysis

In their Motion, Plaintiffs set forth five categories of discovery requests (to which Defendant objected) relating to the bad faith cause of action: (1) discovery related to prior bad faith claims against Defendant; (2) discovery concerning defendant's adjustment of the claim; (3) discovery related to performance goals and evaluations of Defendant's claims department; (4) discovery regarding quality assurance and claim dispute resolution; and (5) discovery concerning

the E&O Clause.[4]   (Doc. # 38).   Additionally, Defendant requested attorney's fees if it prevails in opposition.

### A. Discovery Related to Prior Bad Faith Claims against Defendant

Plaintiffs submitted for the court's consideration one interrogatory and four document requests under the "prior bad faith claims" category.   (*See* Doc. # 38).   These discovery requests, and Defendant's corresponding objections, are:

> **Interrogatory 9.**   For every lawsuit arising out of a commercial property claim, including but not limited to any claim for equipment breakdown coverage, where Liberty (companywide) has been sued for bad faith and/or other tortious conduct from 2005 to present, please state:
>
> > (a) Case name and CV number;
> > (b) The court and jurisdiction in which it was filed;
> > (c) The names, addresses, and telephone numbers of all parties, including the plaintiffs and defendants;
> > (d) The names, addresses, and telephone numbers of all attorneys for the plaintiffs and defendants;
> > (e) The present status or disposition of the lawsuit;
> > (f) The name and address of each person or entity having possession, custody or control of any records relating to such action.
>
> **ANSWER**: Liberty Mutual objects to this interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Liberty Mutual further objects to the extent this interrogatory seeks information protected by the attorney-client privilege and work product doctrine and on the basis that this interrogatory seeks information related to claims other than the one at issue in this litigation and claims not handled by Liberty Mutual.
>
> **Request 16.**   Copy of all Complaints and claims files from every lawsuit involving a denial of a claim for commercial property coverage, included but not limited to claims for equipment breakdown coverage where you have been sued for bad faith and/or tortious conduct from 2005 to present.
>
> **RESPONSE**: Liberty Mutual objects to this request on the grounds that it is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Liberty Mutual further objects to this request to the extent it seeks information protected by the attorney-client privilege

---

[4] In its reply brief, Plaintiffs state that Defendant provided adequate responses to Interrogatories 7, 12, and 13, and Requests 29, 36, and 37, after the filing of the subject Motion. (*See* Doc. # 46 at 3 n. 1).   Accordingly, those issues are moot and need not be addressed by the court.

and work product doctrine. Liberty Mutual further objects to the extent this request seeks the production of confidential information and information related to claims other than the one at issue in this litigation.

**Request 19.**   Any and all correspondence with any State Department of Insurance and/or Commission that involves alleged bad faith and/or tortious conduct in the adjustment and payment of claims for commercial property coverage since 2005.

**RESPONSE**: Liberty Mutual objects to this request on the grounds that it is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Liberty Mutual further objects to the extent this request seeks the production of confidential information and information related to claims other than the one at issue in this litigation. Liberty Mutual further objects to the extent it seeks information protected by the attorney-client privilege and work product doctrine.

**Request 43.**   Produce a list of all claims asserted against Liberty for bad faith or tortious conduct in connection with Liberty's handling, processing and adjusting of claims.

**RESPONSE**: Liberty Mutual objects to this request on the grounds that it is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Liberty Mutual further objects to this request to the extent it seeks information protected by the attorney- client privilege and work product doctrine. Liberty Mutual further objects to the extent this request seeks the production of confidential information and information related to claims other than the one at issue in this litigation.

**Request 47.**   Produce the complete claims file for each claim and/or case responsive to Interrogatory Nos. 9 […].

**RESPONSE**: Liberty Mutual objects to this request on the grounds that it is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Liberty Mutual further objects to this request to the extent it seeks information protected by the attorney-client privilege and work product doctrine. Liberty Mutual further objects to the extent this request seeks the production of confidential information and information related to claims other than the one at issue in this litigation.

(*Id.*).

Plaintiffs' discovery requests on this topic are plainly overbroad and place a burden on Defendant that outweighs the likely need for such a broad scope of information.  This case involves the denial of a single insurance claim in the state of Alabama.  (Doc. # 1).  It is not a nationwide class action, nor do the events giving rise to Defendant's liability occur before 2010.

(*See id.*).   While Plaintiffs have a right to discovery on their bad faith claim, that right is not unlimited.   *See, e.g.*, Fed. R. Civ. P. 26(b)(2)(c)(iii).   The court will not compel Defendant to respond to the requests as written.[5]

To be sure, Plaintiffs have a right under Alabama law to conduct discovery concerning *aspects* of past bad faith lawsuits filed against Defendant.   *See Ex parte Finkbohner*, 682 So.2d 413 (Ala. 1996).   With regards to Interrogatory 9, those aspects are limited to case name and CV number, the court and jurisdiction in which the cases were filed, and the present status and disposition of those cases.   However, Plaintiffs must further narrow the scope of the information sought, at the least, by specifying the meaning of "bad faith," limiting the jurisdictional geography to the state of Alabama, limiting the meaning of "companywide" to the actual Defendant only (that is, Liberty Mutual Fire Insurance Company) and its affiliated entity or entities handling underwriting, tailoring the bad faith suits to first-party policies only, and shortening the temporal scope.   (A four-year time range has been accepted by Alabama courts, and this court accepts it now as a guideline.   *See id.* (citing *Ex parte Rowland*, 669 So.2d 125, 127-28 (Ala. 1995))).   Plaintiffs will be equipped with that information to uncover from court filings the other information desired, such as the names and addresses of attorneys and the parties in those cases.   Likewise, Plaintiffs can recover the pleadings from those cases (which they asked for in Request 16).   But, whenever Plaintiffs are unable to locate pleadings (for whatever reason), or the difficulty and expense for Plaintiffs to (possibly) travel across Alabama in search of court

---

[5] Further, Plaintiffs' attempts with their October 8, 2015 email to Defendant (sent after filing their Motion To Compel) to voluntarily narrow the scope of the discovery requests (to 2009-2014, and make "companywide" mean only Liberty Mutual Fire Insurance Company and any affiliates or companies handling underwriting, adjustment, or bad faith litigation) do not salvage their request to this court to compel responses. (*See* Doc. # 46-1). Even there, the proposed, narrowed requests are still overbroad and place too heavy a burden on Defendant to produce "companywide." Alabama state courts under state discovery rules (which are similar to the federal rules) have not given such broad discovery on bad faith claims. *See e.g.*, *Ex parte Finkbohner*, 682 So.2d 409, 413-14 (Ala. 1996).

filings outweighs the ease of Defendant to pull those filings from its records, Defendants should supply Plaintiffs with these materials. Accordingly, the court will grant these modified and narrowly tailored aspects of Plaintiffs' discovery requests.

Other aspects of the requests are due to be denied.[6] The Alabama Supreme Court, while allowing discovery of bad faith lawsuits, upheld the denial of discovery of so-called "bad faith claims." *Finkbohner*, 682 So.2d at 413. That court reasoned as follows:

> The term "bad faith" is a legal term corresponding to certain wrongful conduct on the part of an insurer in denying a claim for benefits. For this reason, we conclude that it would be unduly burdensome on [the insurer] for it to have to sift through possibly hundreds, if not thousands, of letters or other items of correspondence complaining of or challenging its denial of particular claims and to have to decide whether any one of the complainants was charging it with a "bad faith" denial of the claim. We also question how many complaints or "claims" not resulting in legal action would be "reasonably calculated to lead to the discovery of admissible evidence."

*Id.* (citing Ala. R. Civ. P. 26(b)(1)). This court agrees. Thus, Request 43 is due to be denied. And, for the same reasons, Request 19 is due to be denied. Correspondence involving allegations of bad faith claims does not mean that those claims resulted in legal action. Likewise, the requests for claims files will not stand. The search for and through them would be unduly burdensome, not only because many files may contain privileged information or protected work product, but they may also have the private information of Defendant's customers. Even if these determinations cannot be made until the files are reviewed, the burden and expense of that review outweighs the reasonable calculation of the request. Regardless, and in any event, if certain of the claims files relate to discoverable bad faith lawsuits, they are still

---

[6] Defendant's request that Plaintiffs pay for any bad faith discovery is also due to be denied. (*See* Doc. # 42). With a sufficiently narrowed request, which the court orders pursuant to its "ample power" under Federal Rule of Civil Procedure 34, Defendant's concerns for excessive costs should largely be satiated.

not discoverable due to the foregoing reasons.[7]   Accordingly, Request 16 is due to be denied in part insofar as it relates to claims files, and Request 47 is due to be denied entirely.  Also, Part (f) of Interrogatory 9 is due to be denied.  Locating that information would cause an undue burden and expense outweighing the likelihood of discovery relevant information, and is not reasonably calculated to lead to the discovery of admissible evidence.

### B. Discovery Related to Defendant's Adjustment of the Claim

Plaintiffs request the court to compel Defendant's response to one interrogatory and one document request (to which Defendant objected), which are related to Defendant's adjustment of the claim.[8]   The interrogatory and objection to it are:

> **Interrogatory 19.**  State whether you set a reserve for the Claim, and the amount of the reserve along the date(s) and details of any adjustments to the reserve.
>
> **ANSWER**:   Liberty Mutual objects to this interrogatory on the grounds that it seeks information related to reserves that is outside the scope of discovery pursuant to Fed. R. Civ. P. 26(b), that it is not relevant to any party's claim or defense, and that is not reasonably calculated to lead to the discovery of admissible evidence. Liberty Mutual further objects to this interrogatory on the basis that it seeks information protected by the attorney-client privilege and work product doctrine.

(Doc. # 38).  The bad-faith claim at issue in this case arises from a first-party insurance policy. (*See* Doc. # 1-1).  The court was unable to locate case law from Alabama state courts or federal courts employing Alabama law concerning first-party claims and loss reserves; thus, it will look to law from other states.  And, in this regard, although Plaintiffs cite a number of bad-faith cases based on other states' laws, which allowed discovery of first-party loss reserve information, this

---

[7] Further, the insureds in those lawsuits may not have even had access to their own claims files.  Indeed, oftentimes, an insured's own claim file may not be available until coverage is first proven. *See, e.g., Akpan v. Farmers Ins. Exchange, Inc.*, 961 So.2d 865, 875 (Ala. Civ. App. 2007).  While that particular issue is not settled in federal court, it is irrelevant to other insureds' claim files. *See, e.g., St. Joe Co. v. Liberty Mut. Ins. Co.*, No. 05-1266, 2006 WL 3391208, at *3 (M.D. Fla. Nov. 22, 2006).

[8] Interrogatories 7, 12, and 13, and Requests 36 and 37 were initially listed under this category but have been resolved by the parties. *See* note 4, *supra*.

court is not persuaded by them. (*See* Docs. # 38 at 14, 46 at 6). Instead, this court joins with the majority view in first-party claims "that reserve information is outside the scope of discovery because the information is not relevant as to what an insurer thought of the merits of a claim. . . ."[9] Ann F. Ketchen, *Reserve and Reinsurance Information: Is It Discoverable?*, 38-SPG Brief 40, 41 (2009); *see also, e.g., Safeguard Lighting Sys, Inc. v. N. Am. Specialty Ins. Co.*, 2004 WL 3037947, at *3 (E.D. Pa. Dec. 30, 2004) (reiterating that "there is a 'tenuous link between reserves and actual liability given that numerous considerations factor into' the calculation of reserves in accordance with statutory requirements" (citations omitted)).  Accordingly, Plaintiffs' request as to Interrogatory 19 is due to be denied.

Plaintiffs' document request and Defendant's objection concerning claim adjustment are:

**Request 18.**  All claim files handled by Dwight Hinton from 2005 to present that involved a claim for coverage on a commercial property.

**<u>RESPONSE</u>**:  Liberty Mutual objects to this request on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Liberty Mutual further objects to this request to the extent it seeks information protected by the attorney-client privilege and work product doctrine. Liberty Mutual further objects to the extent this request seeks the production of confidential information and information related to claims other than the one at issue in this litigation.

(Doc. # 38).  Plaintiffs have reason to believe Dwight Hinton made the decision on their claim, and his investigation into the facts of the claim under the policy would accordingly be relevant. (*See id.*).  However, discovery must be proportional to the likelihood of discovering relevant evidence.  *See* Fed. R. Civ. P. 26(b)(2)(c)(iii).  Request 18 is overbroad and probable to lead to undue expense.  Defendant is thus entitled to a narrowed scope on Request 18.  Therefore, similar to the narrow tailoring discussed in Part A above, Plaintiffs should restrict the year range

___

[9] Another rationale behind the majority view is that loss reserve information is often protected under the attorney-client privilege or the work product doctrine. Ketchen, 38-SPG Brief at *41. While Defendant also raised that objection, the court determines that reserve information is simply not relevant (at least here), and not reasonably calculated to lead to the discovery of admissible evidence, concerning either policy interpretation or bad-faith investigation.

on this document request and keep it to claims in the state of Alabama for policies like the one at issue in this case.

### C. Discovery Related to Performance Goals and Evaluations of Claims Department

Plaintiffs move the court to compel a response to seven document requests related to performance goals and evaluations of the claims department, to which Defendant objected. Two of the requests (and objections) are as follows:

**Request 20.** A complete and genuine copy of any and all documents relating to the creation, implementation, and application of any cost containment, pay, bonus, or incentive programs for the claims department and/or claims handling employees and supervisors from 2005 to the present.

**RESPONSE**: Liberty Mutual objects to this request on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Liberty Mutual further objects to the extent this request seeks the production of proprietary or confidential information.

**Request 21.** All forecasts and claims payment goals and/or performance criteria of any type that apply to the claims department overall and its personnel for years 2005 to present. This should include, but is not limited to all claims payment goals, claims targets, ratios, percentages, and any other goal or target that would apply to either the claims department overall or to its employees.

**RESPONSE**: Liberty Mutual objects to this request on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Liberty Mutual further objects to the extent this request seeks the production of proprietary or confidential information.

(Doc. # 38). Although there is a strong public policy against the discovery of personnel files, *Coker v. Duke & Co., Inc.*, 177 F.R.D. 682, 685 (M.D. Ala. 1998), the court does not view these requests as asking for information strictly on personnel files. To the contrary, these requests seek information on financial (and similar) incentives for employees. Such employee incentives are indeed relevant or reasonably calculated lead to the discovery of admissible evidence in a bad faith case such as this one. *See Royal Bahamian Assn., Inc. v. QBE Ins. Corp.*, 268 F.R.D. 692,

694 (S.D. Fla. 2010) (citing *Buckley Towers Condo., Inc. v. QBE Ins. Corp.*, 2008 WL 2645680, at *3-5 (S.D. Fla. June 26, 2008)) ("In general, such evidence is only relevant to a bad faith case, not a first party coverage case.").   Nonetheless, the requests as worded are too overbroad and must be narrowed, at the least, in temporal scope, to the individuals who worked on the claim at issue, and to the claims department <u>as a whole</u> (*i.e.*, not individuals unrelated to the claim in this case) if such department-wide incentives exist.

Plaintiffs also requested materials related to, and including, personnel files:

**Request 22.**  All performance evaluation reports, performance plans, performance checklists, performance reviews, PP&Rs or other documents that evaluate the claims department and its personnel for the years 2005 to present.

**RESPONSE**:  Liberty Mutual objects to this request on the grounds that it is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Liberty Mutual further objects to the extent this request seeks the production of proprietary or confidential information or information protected by the attorney-client privilege and work product doctrine.

**Request 23.**  A full and complete copy of all personnel files for any person involved in the handling of any aspect of the Claim, including but not limited to all evaluations or reviews for every adjuster, claims manager, supervisor or other employee who ever reviewed or evaluated any aspect of the Claim. **Please note**: If there is any confidential information in these personnel files, that information should be pointed out with specificity before the due date for answering these requests in an effort to obtain agreement on redaction or protection.

**RESPONSE**:  Liberty Mutual objects to this request on the grounds that it is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Liberty Mutual further objects to this request to the extent it seeks information protected by the attorney client privilege and work product doctrine and to the extent it seeks the production of confidential information.

**Request 24.**  With regard to every adjuster, claims manager, supervisor or other employee who ever reviewed or evaluated any aspect of the Claim, produce all documents concerning a review of each person's job performance for the years 2005 to present.

**RESPONSE**:  Liberty Mutual objects to this request on the grounds that it is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Liberty Mutual further objects to the extent this request seeks the production of confidential information.

(Doc. # 38).

Unlike Requests 20 and 21, these requests are due to be denied entirely for impermissibly seeking discovery of personnel files.  Because public policy strongly disfavors the discovery of personnel files, they are discoverable "only if '(1) the material sought is clearly relevant and (2) the need for discovery is compelling because the information sought is not otherwise readily obtainable.'"  *Coker*, 177 F.R.D. at 685 (quoting *Cooperman v. One Bancorp*, 134 F.R.D. 4 (D. Me. 1991)).  Here, these materials are not clearly relevant, and are not as reasonably calculated to lead to admissible evidence as financial-type incentives.  And, in any event, the fact that some information concerning an individual employee might be recorded in personnel files is not enough to usurp the public policy against disclosing those files.  Plaintiffs have "not shown that any information in any particular employee's personnel file is directly relevant for any other reason, such as impeachment," and that it cannot be obtained in other ways (such as at deposition).  *Royal Bahamian*, 268 F.R.D. at 694; *see also Tolz v. Gieco Gen. Ins. Co.*, 2010 WL 298397, at *3-4 (S.D. Fla. Jan. 19, 2010) (finding production of personnel file improper in bad-faith action where no evidence it is necessary for a specific purpose, such as impeachment).  It is not enough that Defendant holds the files; Plaintiffs can seek the information they want via other means allowed under the Federal Rules of Civil Procedure.

Plaintiffs also requested the following materials concerning Defendant's legal relationship with individuals who handled Plaintiffs' claim:

> **Request 31.**   Any and all contracts or other documentation governing the relationship between Liberty and any employee, agent, adjuster, investigator, or representative who had any role in the investigation or handling of the Claim.
>
> **RESPONSE**:  Liberty Mutual objects to this request on the grounds that it is vague, overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Liberty Mutual further objects to the extent this request seeks the production of confidential information.

(Doc. # 38).  In its response brief, Defendant reported that, before the agreed upon date for it to respond to Plaintiffs' Rule 37 letter and the day after Plaintiffs filed the subject Motion, it supplemented its response to Request 31.  (Doc. # 42 at 42).  Plaintiffs did not raise any issues with this supplementation in their reply, and so the court concludes that the request is moot.

Finally, as follows, Plaintiffs requested materials related to Defendant's corporate values:

**Request 42.**  Any and all documents that relate to corporate values adopted by Liberty as it relates to the treatment of insureds and principles to follow in dealing with policyholders, including any and all guidelines that address Liberty's obligation to exercise utmost good faith in processing its insureds' claims.

**RESPONSE**:  Liberty Mutual objects to this request on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Liberty Mutual further objects to this request to the extent that it seeks information protected by the attorney-client privilege and work product doctrine.

(Doc. # 38).  However, Plaintiffs offer no discussion concerning this request in their Motion and reply.  (*Id.*, Doc. # 46).  In its opposition brief, Defendant writes that it does not know what is actually being requested, and that Plaintiffs have not articulated what information they seek.  (Doc. # 42 at 42).  Nonetheless, Defendant offers (in an attempt to comply with the request) the creed located on the wall at the entrance of its headquarters.  (*Id.* at 43).  Thus, the court considers this request resolved and therefore moot.

### D. Discovery Related to Quality Assurance and Claim Dispute Resolution

Plaintiffs wish the court to compel a response to their proffered and objected to document request concerning quality assurance:[10]

**Request 27.**  Copies of all quality assurance manuals and other documents and/or communications that contain information about your claims handling practices.

**RESPONSE**:  Liberty Mutual objects to this request on the grounds that it is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to

---

[10] In their initial Motion brief, Plaintiffs moved to compel responses to two requests, but one has since been answered and is moot. *See* note 4, *supra*.

the discovery of admissible evidence. Liberty Mutual further objects to this request to the extent it seeks information protected by the attorney client privilege and work product doctrine and to the extent it seeks the production of proprietary or confidential information.

(Doc. # 38). Plaintiffs argue that courts routinely support the discoverability of these types of materials and cite to cases holding that training policies and manuals are discoverable. (*Id.* at 21-22). Defendant responds that Plaintiffs provide no legal basis for the discoverability of the requested quality assurance information, but instead discuss claims manuals and training materials, which Defendant already agreed to produce. (Doc. # 42 at 43). In their reply brief, Plaintiffs specify that "quality assurance" means materials reflecting Defendant's efforts to ensure its employees adjust claims in compliance with the claims manuals and training materials Defendant is producing. (Doc. # 46 at 8). They also contend that it logically follows the cited case law that materials reflecting enforcement would be discoverable. (*Id.*). The court agrees. Because Plaintiffs allege a bad faith cause of action, materials related to training policies and manuals may be relevant or lead to the discovery of admissible evidence. But, as with many of the other request the court is allowing, Plaintiffs must narrow the scope of the request to a set, short timeframe, and to any relevant materials connected to the claims handlers who worked on Plaintiffs' claim.

### E. Discovery Related to the E&O Clause

Plaintiffs additionally move this court to compel Defendant's response to interrogatories and document requests regarding the E & O Clause to which Defendant objected:

**Interrogatory 10.** For every instance in which Liberty (companywide) has handled a claim for coverage under the Errors & Omissions clause at issue, or any similar Errors & Omissions clause, from 2005 to present, state:

(a) The date of the loss;

(b) The date the claim(s) was presented to you;

(c) The names, addresses, and telephone numbers of all claimants and insureds;

(d) The names, addresses, and telephone numbers of all attorneys for the claimants and insureds (if applicable);

(e) The date of any denial of the claim;

(f) The date of any settlement or judgment;

(g) The disposition of the claim;

(h) The name and address of each person or entity having possession, custody or control of any records relating to such claim.

**ANSWER**: Liberty Mutual objects to this interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Liberty Mutual further objects to the extent this interrogatory seeks information protected by the attorney-client privilege and work product doctrine and on the basis that this interrogatory seeks information related to claims other than the one at issue in this litigation and claims not handled by Liberty Mutual.

**Interrogatory 11.**   For every instance in which Liberty (companywide) has litigated a claim for coverage under the Errors & Omissions clause at issue, or any similar Errors & Omissions clause, from 2005 to present, state:

(a) Case name and CV number;

(b) The court and jurisdiction in which it was filed;

(c) The names, addresses, and telephone numbers of all parties, including the plaintiffs and defendants;

(d) The names, addresses, and telephone numbers of all attorneys for the plaintiffs and defendants;

(e) The present status or disposition of the lawsuit;

(f) The name and address of each person or entity having possession, custody or control of any records relating to such action.

**ANSWER**:  Liberty Mutual objects to this interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Liberty Mutual further objects to the extent this interrogatory seeks information protected by the attorney-client privilege and work product doctrine and on the basis that this interrogatory seeks information related to claims other than the one at issue in this litigation and claims not handled by Liberty Mutual.

16

**Request 45**:  Any and all revisions adopted for equipment breakdown insurance policies issued by Liberty which modify and/or amend the Errors & Omissions clause made the basis of Plaintiffs' Complaint.

**RESPONSE**:   Liberty Mutual objects to this request on the grounds that it is vague and unduly burdensome. Liberty Mutual also avers that the subject policy is an ISO form that is revised by ISO, not Liberty Mutual.

**Request 46:**   Any and all documents or other materials which in any way reference, relate to or reflect the underwriting intent of the Errors & Omissions clause made the basis of Plaintiffs' Complaint.

**RESPONSE**:   Liberty Mutual objects to this request on the grounds that it is vague and unduly burdensome. Liberty Mutual further objects to this request to the extent it seeks information protected by the attorney-client privilege and work product doctrine.

**Request 47.**   Produce the complete claims file for each claim and/or case responsive to Interrogatory Nos. 9, 10, and 11.

**RESPONSE**:   Liberty Mutual objects to this request on the grounds that it is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Liberty Mutual further objects to this request to the extent it seeks information protected by the attorney-client privilege and work product doctrine. Liberty Mutual further objects to the extent this request seeks the production of confidential information and information related to claims other than the one at issue in this litigation.

(Doc. # 38).   Even though it validly objected to, among other things, the overbreadth of these discovery requests, Defendant indicated it would continue to search and supplement its production if it finds anything, and stated its willingness to confer in good faith as to what exactly Plaintiffs seek.  (*See* Doc. # 42 at 46).  Plaintiffs, in their reply brief, state that Defendant "has indicated that it will search for this information, but to date [October 13, 2015] has not supplemented its responses."   (Doc. # 46 at 8).  Because of the amount of time that has passed since the briefing cycle, and in light of the parties' statements, the court will defer a ruling on these discovery requests.  Instead, it will order the parties to confer in good faith and file a joint report concerning the status of these (and any other outstanding) discovery requests.  There is no

reason the parties cannot act as the professionals they are and, without the court's assistance, work out these (and any other remaining) discovery issues.[11]

### F. Costs and Fees are Due to be Denied

Defendant requests prevailing party fees pursuant to Federal Rule of Civil Procedure 37(a)(5)(B). To be sure, while Defendant has prevailed in some part, it has not in others. Moreover, and in any event, although the court believes the parties could have (likely) reached a mutual outcome prior to filing the subject Motion, Plaintiffs are not unjustified in filing it. Accordingly, no fees or costs are due to be awarded. Likewise, the court defers to the parties to work out payment of complying with discovery costs. With sufficiently narrowed requests, many of Defendant's cost concerns should be satisfied.[12]

## V.      Conclusion

For the reasons set out above, Plaintiffs' Motion To Compel Liberty To Respond to Bad Faith Discovery (Doc. # 38) is due to be granted in part with narrowed tailoring, denied in part, and is moot in part. A separate order will be entered.

Done and ordered this 5th day of April 2016.

James H. Hancock

SENIOR UNITED STATES DISTRICT JUDGE

---

[11] When conferring, the parties should keep in mind the court's reasoning set forth in this memorandum opinion.

[12] The parties are again encouraged to try to work through any and all discovery issues before coming to the court with discovery motions. With the exception of any remaining issues in the joint status report the court is ordering, there is no guarantee that the court will make the same determinations of costs and fees if resolving future discovery disputes in this case.